UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HASSIE-DEMOND; NOWLIN,<br><br>      Plaintiff,<br><br>v.<br><br>NEW MILLENNIUM,<br><br>      Defendant. | Civil Action No. 1:10-CV-857 |

### BRIEF IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT

Pursuant to Local Rule 7.3, Defendant New Millennium Bank (the Bank) respectfully submits this brief in support of its Motion to Set Aside Entry of Default.

**I. NATURE OF THE MATTER BEFORE THE COURT**

Just sixteen days ago, when it received the Court's entry of default, the Bank first learned that this lawsuit had been filed. In the complaint, Mr. Nowlin purports to assert claims against the Bank under the Federal Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA). As explained below, Mr. Nowlin's claims are fatally flawed as a matter of law. Furthermore, as shown by the affidavit of Daniel Symonds, the Bank's Credit Card Program Manager, the claims are premised on patently false factual allegations. The complaint should be dismissed.

**II. QUESTION PRESENTED**

Does good cause exist for the Court to set aside the March 21, 2011 Entry of Default against the Bank?

## III. STATEMENT OF FACTS

### A. The Complaint

Mr. Nowlin alleges that the Bank is a "3rd party debt collector . . . governed" by the FDCPA. (Compl., Dkt. No. 2, at 2.) However, Mr. Symonds's affidavit shows that the Bank is not a third-party debt collector and is therefore not subject to the FDCPA. (Aff. ¶ 11.)

In his FCRA claims, Mr. Nowlin denies that he ever had a credit card account with the Bank. (Compl. at 2, 7-8.) Mr. Nowlin claims that (1) he "never received any information from" or "applied for any . . . credit card" with the Bank; (2) he never had any "contractual agreement for credit" with the Bank; and (3) the Bank "never contacted [him] at any time" about "any alleged debt/account." (*Id.*)

On the contrary, as Mr. Symonds's affidavit and the attached exhibit show, Mr. Nowlin applied for a secured credit card account with the Bank in August 2005.[1] (Aff. ¶ 7; *see also* Ex. A at 2 (signed credit card application).) After Mr. Nowlin submitted an application fee and an adequate security deposit, his credit card account was opened. (Aff. ¶ 7.)

At first, Mr. Nowlin paid his credit card bills sporadically, missing payments in March 2006, October 2006, November 2006, January 2007, October 2007, and November 2007. (*Id.* ¶ 8.) After making his December 2007 payment, Mr. Nowlin stopped paying his bills entirely. (*Id.* ¶ 9.) The Bank subsequently sent Mr. Nowlin at

---

[1] Mr. Nowlin also applied for a second secured credit card account in December, 2006, but that account was never funded. (Aff. ¶ 5.)

least six statements describing his debt. (*Id.*, Ex. A. at 33-38.) In June 2008, after Mr. Nowlin had been delinquent for six months, the Bank charged off (that is, designated as an uncollectible debt) Mr. Nowlin's unpaid balance of $156.84. (*Id.* ¶ 9.)

Mr. Nowlin further alleges that, even if he had an account with the Bank, the Bank violated the FDCPA by (1) "[f]ailure to inform the National Credit Reporting Agencies that the alleged account is in dispute;" and (2) "[c]ontinually updating [his] credit report with . . . erroneous and inaccurate information for over two years." (*See, e.g.*, Compl. at 8-9.) These allegations also are contradicted by Mr. Symonds's affidavit, which states that only accurate information was reported to the credit agencies about Mr. Nowlin's account, which was never in dispute. (Aff. ¶¶ 3, 10.)

### B. Service

Mr. Nowlin filed his complaint against "NEW MILLENNIUM" on November 12, 2010. (Compl., Dkt. No. 2.) The complaint includes a "certificate of service" that states that he mailed a copy to "NEW MILLENIUM" on October 29, 2010. A summons was issued as to "NEW MILLENNIUM" on November 19, 2010. (Summons, Dkt. No. 5.) Mr. Nowlin used the United States Marshal to attempt to serve the Bank by mail. (*See* Return of Service, Dkt. No. 7.) Copies of the complaint and summons were sent to "NEW MILLENNIUM" at "57 Livingston Ave, New Brunswick, NJ, 08901," via certified mail on December 8, 2010. (*See id.*) Those papers apparently were delivered to the Bank's post office box (rather than its street address) in New Brunswick on December 16, 2010. (*See id.*)

### C. Procedural Posture

On January 13, 2011, Mr. Nowlin filed a document styled "Motion for Default Judgment." (Dkt. No. 8.) On February 10, 2011, the Court entered an order that construed the filing as a motion for entry of default and directed the Clerk to enter a default. (Dkt. No. 9.) The Clerk entered a default on March 21, 2011. (Dkt. No. 10.) The Bank did not learn that this lawsuit had been filed until it received the Court's entry of default sixteen days ago. (Aff. ¶ 12.)

### D. Other Lawsuits

Mr. Nowlin has filed nearly identical complaints against LandSafe Credit, Inc. (Case No. 1:11-cv-19, Dkt. No. 2) and American Home Mortgage Servicing, Inc. (Case No. 1:11-cv-20, Dkt. No. 2). Motions in all three of Mr. Nowlin's lawsuits have been referred to United States Magistrate Judge Trevor P. Sharp. In each lawsuit, Mr. Nowlin prematurely filed a document styled "Motion for Default Judgment," despite the fact that default had not been entered. (*See* Case No. 1:11-cv-19, Dkt. No. 7; Case No. 1:11-cv-20, Dkt. No. 11.) American Home Mortgage Servicing awaits a ruling on its motion to dismiss. (*See* Case No. 1:11-cv-20, Dkt. Nos. 18, 19, 21 & 22.) Landsafe Credit has yet to respond to the complaint.

## IV. ARGUMENT

"The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). In making this determination, a district court should consider whether the movant (1) has a meritorious defense or defenses, (2) acts with reasonable promptness and

without any dilatory purpose, and (3) has caused the plaintiff to suffer prejudice. *Payne ex rel. Estate of Calzada v. Brake,* 439 F.3d 198, 204-05 (4th Cir. 2006).

Relief from entry of default "should be granted where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense." *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Id.* at 727; *see also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988).

In addition, as "has been held in an extensive line of decisions," Rule 55(c) is "to be liberally construed in order to provide relief from the onerous consequences of defaults." *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Id.*

As shown below, good cause exists here, so the entry of default against the Bank should be set aside.

### A.  The Bank Has Meritorious Defenses to Mr. Nowlin's Claims.

Because the Bank is not a third-party debt collector, Mr. Nowlin's FDCPA claims are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As shown by Mr. Symonds's affidavit, Mr. Nowlin's FCRA claims are founded on false allegations and cannot succeed.

5

Finally, because Mr. Nowlin has not sufficiently served the Bank with process, his entire complaint is subject to dismissal under Rules 12(b) (4) and (5) of the Federal Rules of Civil Procedure.

### 1. Mr. Nowlin's FDCPA claims fail because the Bank is not a third-party debt collector.

Only third-party debt collectors are subject to the FDCPA. *See* 15 U.S.C. § 1692a(6) (defining "debt collector"); *see generally* 15 U.S.C. §§ 1692b-1692k (describing unlawful practices by "debt collectors" and penalties for such practices). Original creditors are specifically exempted from the Act's coverage. *See* 15 U.S.C. § 1692a(6)(A) (excluding from the definition of debt collector "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor").

As Mr. Symonds's affidavit establishes, the Bank was the original creditor for Mr. Nowlin's credit card account. Any collection efforts the Bank made were on its own behalf prior to its charge-off of the debt. (Aff. ¶¶ 5-9, 11.) The Bank has never acted as a third-party debt collector with respect to Mr. Nowlin's account. (Aff. ¶ 11.) In fact, the Bank provides no third-party debt collection services at all. (*Id.*) Accordingly, Mr. Nowlin's FDCPA claims are fatally flawed. Should this Court set aside the entry of default, the FDCPA claims would be subject to dismissal.

### 2. The Bank has meritorious factual defenses to Mr. Nowlin's FCRA claims.

Mr. Nowlin's FCRA claims hinge on five allegations that are flatly contradicted by the record evidence:

First, Mr. Nowlin claims that he never applied for a credit card, yet the Bank's files contain two credit card applications, one from August 2005 and another from December 2006. (*Compare* Compl. at 7-8 *with* Aff. ¶¶ 5, 7 & Ex. A at 2.)

Second, he claims that he never contracted with the Bank, yet the Bank's files show that he had a secured credit card account for more than two years. (*Compare* Compl. at 2, 7 *with* Aff. ¶¶ 7-9.)

Third, he claims that the Bank never contacted him about any debt, yet the Bank's files show that it contacted him at least five times during the first half of 2008—without response—before it finally charged off his account. (*Compare* Compl. at 7 *with* Aff. ¶ 9 & Ex. A at 33-38.)

Fourth, he claims that the Bank gave inaccurate information to the credit reporting agencies; in fact, the Bank accurately reported the status of his delinquent account. (*Compare* Compl. at 7-15 *with* Aff. ¶¶ 3, 10.)

Fifth, he claims that the Bank failed to tell the credit agencies that the debt was in dispute, when in fact the debt was never in dispute and (according to the Bank's records) has not been contested by Mr. Nowlin except in this lawsuit. (*Compare* Compl. at 7-15 *with* Aff. ¶¶ 3, 10.)

Notwithstanding that they are based on false allegations, Mr. Nowlin's FCRA claims also lack any legal merit and are subject to dismissal under Rule 12(b)(6). Mr. Nowlin claims that the Bank violated 15 U.S.C. § 1681s-2(a) through its alleged failure to provide accurate information to credit reporting agencies. (Compl. at 7-15.) Yet

7

courts have uniformly held that consumers (like Mr. Nowlin) have no private cause of action against furnishers of information (like the Bank) for such an alleged violation. *See, e.g., Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008).

At best, Mr. Nowlin misunderstands the FCRA's purpose and application. At worst, he is trying to extract tens of thousands of dollars in compensatory and punitive damages from the Bank when he did not pay his credit card bill. Either way, Mr. Nowlin's claims find no support in the record evidence or the substantive law.

### 3. Mr. Nowlin has not sufficiently served the Bank with process.

Additionally, Mr. Nowlin's complaint is subject to dismissal for insufficient service of process. Fed. R. Civ. P. 12(b) (4) & (5).

Under the Federal Rules of Civil Procedure, a plaintiff may serve a corporate defendant in one of two ways: (1) by delivering a copy of the summons and the complaint to a corporate officer, a managing agent or general agent of a corporation, or any other agent authorized by appointment or by law to receive service of process on behalf of the corporation; or (2) by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located [here, North Carolina] or where service is made [here, New Jersey]." Fed. R. Civ. P. 4(h)(1) & 4(e)(1).

Service of process rules and statutes are strictly construed and enforced, and a plaintiff who fails to comply with them does not properly serve the defendant. *See*

*Shaver v. Cooleemee Volunteer Fire Dep't*, No. 1:07-cv-175, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008); *see also Stack v. Union Reg'l Mem'l Med. Ctr., Inc.* 171 N.C. App. 322, 328, 614 S.E.2d 378, 382, *cert. denied*, 360 N.C. 66, 621 S.E.2d 877 (2005); *Berger v. Paterson Veterans Taxi Serv.*, 581 A.2d 1344, 1346 (N.J. Super. Ct. App. Div. 1990). The plaintiff bears the burden of proving strict compliance with the service requirements. *Plant Genetic Systems, N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526 (M.D.N.C. 1996). Mr. Nowlin does not get an exemption simply because he is proceeding pro se: "These rules apply equally to litigants proceeding with or without counsel." *Shaver*, 2008 WL 942560, at *2.

In this case, Mr. Nowlin did not deliver the summons and complaint to the Bank, as required by Rule 4(h). He instead attempted to serve the Bank by having the United States Marshal mail the summons and complaint (Dkt. No. 7.) Mr. Nowlin's attempted service thus must satisfy either North Carolina law or New Jersey law. It satisfies neither.

Under North Carolina law, to properly serve a foreign corporation, a plaintiff must "mail[] a copy of the summons and of the complaint, registered or certified mail, return receipt requested, *addressed to [an] officer, director or [managing] agent of the corporation.*" N.C. Gen. Stat. § 1A-1, Rule 4(j)(6)(a)-(c) (emphasis added). Similarly, the New Jersey rules require service of process on an "officer, director, trustee or managing or general agent" of a domestic corporation. N.J. R. Civ. P. 4:4-4(a)(6). In New Jersey, unlike in North Carolina, default can occur only when a defendant is served

by hand, not by mail. N.J. R. Civ. P. 4:4-4(c).

A recent case with remarkably similar facts illustrates this Court's strict application of service requirements. *Shaver*, 2008 WL 942560, at *1-3. In *Shaver*, a pro se plaintiff filed an employment action against a volunteer fire department. *Id.* at *1. He tried to effect service by mail, but he addressed the service papers "solely to the corporate defendant" without "any direction to an 'officer, director or agent.'" *Id.* at *2. The Court dismissed the case under Rules 12(b)(4) & (5). *Id.* The Court did so even though the fire chief himself—the controlling officer of the department—had signed the return receipt. *Id.* at *3.

Like Mr. Shaver's attempted service, the papers sent by the United States Marshal on Mr. Nowlin's behalf were addressed to "NEW MILLENNIUM" rather than to an officer, director or managing agent of the Bank. (*See* Dkt. No. 7.) Accordingly, Mr. Nowlin's complaint should be dismissed for insufficient service of process. *Shaver*, 2008 WL 942560, at *2; *Adams v. GE Money Bank*, No. 1:06-cv-227, 2007 WL 1847283, at *2-3 (M.D.N.C. June 25, 2007) (dismissing a pro se plaintiff's complaint for insufficient service of process where the service papers were addressed to the defendant business entities rather than to an officer, director or managing agent of the entities). The only difference between *Shaver* and this case is that the Bank, unlike the fire department, had no actual notice of Mr. Nowlin's lawsuit. (Aff. ¶ 12.) The facts here thus justify stricter adherence to the service rules than in *Shaver*.

**B.    In the Event That the Court Finds That the Bank Was Properly Served, the Bank Acted Promptly to Request That the Court Set Aside the Entry of Default.**

Even if the Court finds that the Bank was properly served, the evidence shows that the Bank's delay in responding to the complaint did not result from any untoward or dilatory conduct on its part. Rather, the delay was the result of an excusable mistake by the Bank. Although the service package apparently was delivered to the Bank's post office box on December 16, 2011, it never reached the hands of the persons presently tasked with handling incoming lawsuits. When the Bank first received notice of this lawsuit via the entry of default, it undertook a diligent search to locate the package. To date, the package has not been found.

Since learning about the entry of default less than three weeks ago, the Bank has acted with reasonable promptness to set it aside. It immediately sought recommendations from its New Jersey counsel for litigation attorneys in North Carolina. It then retained North Carolina counsel, who immediately initiated the necessary investigation and began preparation of these motion papers. These facts make clear that good cause supports setting aside the entry of default. *See Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 n.2 (4th Cir. 1987) (concluding that neither the movants nor their attorneys should "be faulted" for filing a Rule 55(c) motion more than ten months after default was entered); *Eaker v. Overturf,* No. 1:07-cv-608, 2008 WL 2945454, at *1-3 (M.D.N.C. July 25, 2008) (setting aside an entry of default for good cause where the motion was filed more than three months after service was effected and more than one month after the motion

11

for entry for default was served on defendant's counsel); *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.,* 130 F. Supp. 2d 712, 718 (D. Md. 2001) (holding that a delay of more than one month qualified as reasonable promptness, where movant's counsel was served with the relevant pleading more than a year prior to the entry of default).

### C. Mr. Nowlin Would Suffer No Prejudice If the Entry of Default Were Set Aside.

Perhaps most importantly, Mr. Nowlin will not suffer any prejudice should the Court set aside the entry of default. Given the case's present procedural posture, the defects in Mr. Nowlin's attempted service, and his baseless claims, setting aside the default against the Bank could not conceivably prejudice Mr. Nowlin. *See, e.g., Lolatchy*, 816 F.2d at 952-53; *Eaker*, 2008 WL 2945454, at *3. Moreover, because he is proceeding pro se, Mr. Nowlin did not incur any attorney's fees for the preparation of his default motion.

## V. CONCLUSION

As described above, the Bank has meritorious defenses based on specific evidence. It acted with reasonable promptness in moving to set aside the entry of default. Mr. Nowlin would suffer no prejudice if the default were set aside. Having shown that good cause exists under Rule 55(c), Federal Rules of Civil Procedure, the Bank respectfully requests that the Court grant its Motion to Set Aside Entry of Default.

This the 20th day of April, 2011.

                    /s/ Matthew W. Sawchak
                    Matthew W. Sawchak
                    N.C. State Bar No. 17059
                    Jeffrey D. Bradford
                    N.C. State Bar No. 37184
                    ELLIS & WINTERS LLP
                    Post Office Box 33550
                    Raleigh, North Carolina 27636
                    Telephone: (919) 865-7000
                    Facsimile: (919) 865-7010
                    E-mail: matt.sawchak@elliswinters.com

                    *Attorneys for Defendant New Millennium Bank*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. A copy of the same also has been placed with United States Postal Service via first class mail, postage prepaid, addressed to the following:

Hassie-Demond Nowlin, Plaintiff
c/o 2020 Anthony Court
Greensboro, North Carolina 27406

This the 20th day of April, 2011.

/s/ Matthew W. Sawchak
Matthew W. Sawchak
N.C. State Bar No. 17059
Jeffrey D. Bradford
N.C. State Bar No. 37184
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
E-mail: matt.sawchak@elliswinters.com

*Attorneys for Defendant New Millennium Bank*